UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

ROPER TECHNOLOGIES, INC.,

   Plaintiff,

vs.                           No.: 8:17-CV-1522-T-33MAP

ANTHONY LYSENKO,

   Defendant.

_____/

## <u>DEFENDANT ANTHONY LYSENKO'S<br>MOTION FOR RULE 11 SANCTIONS</u>

Pursuant to Federal Rule of Civil Procedure 11, Defendant Anthony Lysenko ("*Lysenko*") moves for sanctions against Plaintiff Roper Technologies, Inc. ("*RTI*") and RTI's counsel because RTI has asserted claims in the First Amended Complaint (the "*Complaint*") without evidentiary or legal support. As explained in greater detail in the accompanying memorandum of law, Lysenko is entitled to an award of sanctions if the Complaint is not withdrawn against Lysenko within 21 days of service of this motion.

## <u>MEMORANDUM OF LAW</u>

The Complaint is patently defective under the Computer Fraud & Abuse Act, 18 U.S.C. § 1030 ("*CFAA*") and should never have been brought. As discussed in greater detail in Lysenko's Dispositive Motion to Dismiss First

Amended Complaint and Supporting Memorandum of Law (DE 20) (the "*Motion to Dismiss*"), the Complaint fails to state a claim under CFAA as matter of law, whether brought under the "data theft," "fraud", or "hacking" provisions.[1] More importantly, RTI has presented the Court with "factual" allegations that are undeniably false and no doubt contradicted by the very "reports" upon they supposedly rely in accusing Lysenko of "fraudulently" and "intentionally" "attempting to hack" into and "steal confidential information" from its so-called "online treasury management system."

The legal and factual inadequacy of the Complaint would have been readily apparent to RTI and its attorneys had even a cursory review of the facts and law been undertaken rather than filing baseless accusations of criminal conduct. Lysenko respectfully submits that sanctions are warranted because of RTI's conduct in filing and maintaining a frivolous lawsuit, void of any legal or factual basis, and in bad faith as demonstrated by the "actual" facts.

## Argument

### A.    Background

RTI is a publicly traded corporation that describes itself as "diversified technology company with annual revenues of $3.8 billion" that provides

---

[1] As noted in the Motion to Dismiss, the Complaint did not identify which of the several substantive bases of CFAA it relies upon for its alleged claim, hinting at multiple provisions but failing to allege the elements required for any CFAA theory.

"engineered products and solutions for global niche markets, including software

information networks, medical, water, energy, and transportation." *See* Exhibit A

(RTI's current "About Us" page, retrieved from http://www.ropertech.com/about

on December 19, 2017). RTI boasts that it "designs and develops software (both

software-as-a-service and licensed)" for various industries worldwide. *See* Exhibit

B (Investors Relations Information Form, retrieved from

http://www.ropertech.com/sites/default/files/IR%20Fact%20Sheet%20Q3%2717

%20FINAL%20for%20Web.pdf  on  December 8, 2017). Defendant, Anthony G.

Lysenko ("*Lysenko*") was employed by RTI from 2007 until his employment was

abruptly terminated on August 6, 2015. *See* Exhibit C (Lysenko Declaration dated

December 7, 2017) ("*Lysenko Declaration*").

### B.    Rule 11 requirements and consequences

Under Federal Rule of Civil Procedure 11, when an attorney signs a

pleading or other written paper and files it with the Court, the attorney is certifying

to the Court that, to the best of the attorney's personal knowledge, information,

and belief, formed after an inquiry reasonable under the circumstances:

> (2)    the claims, defenses, and other legal contentions are
> warranted by existing law or by a nonfrivolous argument for
> extending, modifying, or reversing existing law or for establishing
> new law;
>
> (3)    the factual contentions have evidentiary support or, if
> specifically so identified, will likely have evidentiary support after a
> reasonable opportunity for further investigation or discovery. . . .

3

*See* Fed. R. Civ. P. 11(b)(2) & (3); *accord Lee v. Mid-State Land & Timber Co.*, 285 F. App'x 601, 608 (11th Cir. 2008); *Tozier v. City of Temple Terrace*, No. 8:10-cv-2750-T-33EAJ (M.D. Fla. Sep. 22, 2011). "Rule 11 stresses the need for some prefiling inquiry." *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992).

Sanctions are appropriate pursuant to Rule 11 "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (quoting *Jones v. Int'l Riding Helmets, Inc.*, 49 F.3d 692, 694 (11th Cir. 1995)). "Imposition of sanctions on the attorney rather than, or in addition to, the client is sometimes proper 'since it may well be more appropriate than a sanction that penalizes the parties for the offenses of their counsel.'" *Id*. (quoting *Jones*, 49 F.3d at 694). Thus, "[s]anctions may be imposed on the attorney, law firm, or party if Rule 11 is violated, the offending party is provided with an opportunity to withdraw the objectionable pleading and fails to do so, and a motion for sanctions is filed with the court." *Lee*, 285 Fed. App'x at 608 (citing Fed. R. Civ. P. 11(c)(1-2)).

When assessing a party's conduct under Rule 11, this Court may use an objective standard and examine the reasonableness of the conduct under the circumstances, including what was reasonable to believe at the time the pleading was submitted. *See, e.g., Custom Mfg. & Eng'g v. Midway Servs.*, No. 8:03-cv-2671-T-30MAP, 2006 WL 4792784, *2 (M.D. Fla. Sept. 14, 2006) (citing *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)).

A court generally conducts a two-part inquiry when considering a motion for sanctions: (1) whether the party's claims are objectively frivolous in view of the facts or law; and if so, (2) whether the person who signed the pleadings should have been aware that they were frivolous. *See Worldwide Primates*, 87 F.3d at 1254. Even if counsel had a good faith belief that the claims were sound, sanctions must be imposed if counsel failed to make a reasonable inquiry. *Id*. Here, the claims in the Complaint are objectively frivolous, and RTI's attorneys should have been aware that they were frivolous.

### C.    RTI's Complaint is objectively and patently frivolous in view of both the facts and the law

The Complaint is premised entirely on the CFAA, which prohibits seven (7) types of computer crimes involving or related to unauthorized (or exceeding authorization in most categories) access to computers. *See* 18 U.S.C. § 1030(a). Criminal defendants charged with violating, attempting to violate and/or conspiring to violate CFAA face penalties ranging from monetary fines to lengthy

incarceration. *See* 18 U.S.C. § 1030(c). The CFAA was enacted in 1984 to enhance the government's ability to prosecute computer crimes. *See, e.g., Enhanced Recovery Co. v. Frady,* No. 6:17–CV–933–ORL–40DCI, 2015 WL 1470852, at *5 (M.D. Fla. Mar. 31, 2015). The CFAA was "'designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possessed the capacity to access and control high technology processes vital to our everyday lives....'" *Alternative Medicine Integration Group, Inc. v. Langford*, No. 8:13-CV-2909-T-33AEP, 2013 WL 6195774, at *3 n. 1 (M.D. Fla. Nov. 19, 2013) (quoting *Trademotion, LLC v. Intelligence Auto. Corp.,* 857 F. Supp. 2d 1285, 1289-90 (M.D. Fla. 2012)). *See also Allied Portables, LLC v. Youmans*, 2015 IER Cases 184,602, 2015 WL 3720107, at *3 (M.D. Fla. 2015).

Although primarily a criminal statute, CFAA creates a "limited private right of action" in favor of one who has suffered "damage" or "loss" because of a "violation" against the "violator." *See* 18 U.S.C. § 1030(g); *Enhanced Recovery,* 2015 WL 1470852, at *11; *Coll Builders Supply, Inc. v. Velez*, No. 6:17–CV–933–ORL–40DCI, 2017 WL 4158661, at *6 (Aug. 31, 2017), *report & recommendation adopted,* 2017 WL 4125641 (M.D. Fla. Sep. 18, 2017). Unlike criminal cases, a civil complaint must allege not only "damage or loss" because of a "violation," but also conduct involving one of five statutory factors. 18 U.S.C. §

1030(g).[2] *See also Resdev, LLC v. Lot Builders Ass'n*, No. 6:04-CV-1374ORL31DAB, 2005 WL 1924743, at *3 (M.D. Fla. Aug. 10, 2005) (CFAA permits private action for plaintiff who suffers "a certain type of root injury" only if "one of five operatively-substantial effects occurs."). Simply put, not only must RTI allege that Lysenko "violated" the CFAA causing RTI "damage" or "loss" as those terms are particularly defined by CFAA, but that the "violation" resulted in a cognizable loss meeting the $5,000 in a one (1) year period threshold. *See* 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), 1030(g). *Accord Allied Portables*, 2015 WL 3720107, at *3; *Aquent, LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1342 (M.D. Fla. 2014).

As noted above, the CFAA authorizes civil actions only against "violators" by those who have suffered damage or loss as a result of a "violation," *Agilysys*, 2017 WL 2903364 at *6. The essence of a violation of the CFAA is "access" to a protected computer and its consequences; while several substantive offenses may form the basis of a civil claim, all require both "access" and "loss." RTI has known all along that it cannot allege *any* of these elements.

---

[2] § 1030(g) limits civil actions to those involving one of the five "factors" enumerated in subparagraphs (I)-(V) of § 1030(c)(4)(A)(i). Only the factor set out in subparagraph (I) (aggregated "loss" of at least $5,000 in one (1) year), is potentially relevant to this case. *See* 18 U.S.C. §1030(g); *Aquent*, 65 F. Supp. 3d at 1352 n. 4 (M.D. Fla. 2014) ("the civil cause of action does not need to be brought under subsection (c)(4)(A)(i), but it must involve conduct enumerated in those paragraphs").

First, critical to any claimed CFAA violation is "access." *See, e.g.,*
*Agilysys, Inc. v. Hall*, ____ F. Supp. 3d ___, 2017 WL 2903364, at *6 (N.D. Ga.
May 25, 2017); (action can only be brought against the "violator," e.g., the one
actually accessed the computers); *Maintenx Management, Inc. v. Lenkowski*, 2015
IER Cases 175,037, 2015 WL 310543, at *3 (M.D. Fla. Jan. 26, 2015) (failure to
allege access held fatal to CFAA claims); *Thomas Christopher Group, Inc. v.
Moreno*, No. 8:15–CV–992–T–17EAJ, 2015 WL 4139169, at *3 (M.D. Fla. Jul. 8,
2015) (failure to allege facts showing defendant intentionally accessed computer);
*Power Equip. Maintenance, Inc. v. AIRCO Power Servs., Inc.*, 953 F. Supp. 2d
1290, 1297 (S.D. Ga. 2013) ("CFAA requires that the individual actually *access*
the information.."); *Trademotion,* 857 F. Supp. 2d at 1293 (no allegations that
either defendant accessed plaintiffs' protected computers); *Davies v. Afilias Ltd.,*
293 F. Supp. 2d 1265, 1273 (M.D. Fla. 2003). The Complaint concedes the failure
of this element by repeatedly characterizing the "offending" conduct as the
"attempts" to access RTI's computers. At no point does the Complaint allege
actual "access"; consequently, it alleges no "violation."

Not surprisingly, the Complaint likewise cannot allege any "loss" required
by CFAA, much less meet the $5,000 threshold required for CFAA claims. The
CFAA ascribes a specific and limited meaning to the term "loss," defining it as
"any reasonable cost to any victim, including the cost of responding to an offense,

conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).  Thus, "loss" includes the "reasonable costs incurred in connection with such activities as responding to *a violation*, assessing the damage done, and restoring the affected data, program system, or information to its condition prior to the violation" and "any revenue lost, cost incurred, or other consequential damages incurred because of *interruption of service*." *Brown Jordan Internat'l, Inc. v. Carmicle,* 846 F.3d 1167, 1174 (11th Cir. 2017) (emphasis added). *See also Aquent*, 65 F. Supp. 3d at 1344-45; *Klein & Heuchan, Inc. v. Costar Realty Info, Inc.,* No. 8:08–CV–1227–T–30EAJ, 2009 WL 963130 (M.D. Fla. Apr. 8, 2009).

RTI fails to allege cognizable "loss" of any amount or even include the term "loss." The Complaint's sole reference to any damages is the conclusory statement that "[a]s a result of Lysenko's conduct, within less than one year's time, Roper has incurred substantial damages in excess of $5,000." (DE 10 at ¶ 24). In *SkiData v. Goudie*, No. 6:12-CV-1612-ORL-36KRS, 2012 WL 12883836 (M.D. Fla. Dec. 19, 2012), the Court rejected similar allegations in a Verified Complaint as insufficient to meet minimum pleading requirements, where the pleadings did not allege any costs cognizable as "loss" under CFAA. *Id*. at *2*. Nor

can the Complaint allege any type of damage or harm that would be cognizable "loss" under the CFAA. The Complaint does not allege that RTI investigated or responded to any activity or corrected any damage caused thereby, merely that its technology staff "observed" alleged attempts by Lysenko to "improperly access" RTI's system. (DE 10 at ¶ 10). The Complaint does not and cannot allege any legitimate costs or expenses with respect to the alleged "hacking" attempts, which is imminently understandable, as RTI has known all along that no such hacking attempts were occurred.

Likewise, RTI does not and cannot allege *any* interruption of service, the other category of cognizable "loss." *See Brown Jordan,* 846 F.3d at 1174; *Klein & Heuchan,* 2009 WL 963130, at *3. Naked and substantiated allegations of non-actionable "attempts" to access a computer, combined with conclusory damage statements in an unverified pleading do not satisfy CFAA's clear requirements. RTI does not and cannot allege *facts* that satisfy the cognizable "loss" required under CFAA, which is not surprising since RTI has known all along that there has been no CFAA violation.

Moreover, RTI cannot allege the additional elements required by any individual CFAA claims it "may" be making.[3] The glaring deficiencies plaguing

---

[3] As noted in Lysenko's Motion to Dismiss, the Complaint purports to sue under CFAA, it does not specify the substantive provision allegedly violated, instead vaguely alluding to "attempts" to (a) "hack" into RTI's "servers," (DE 10 at ¶ 12), (b) access protected computers with "the intent to defraud and gain access to confidential information about

each individual CFAA theory are readily apparent from the face of the pleadings. For example, RTI cannot allege even a single required element of its "hacking" claim grounded on 18 U.S.C. § 1030(a)(5)(C) because RTI cannot allege that Lysenko intentionally[4] *accessed* a protected computer resulting in both "damage" and "loss," both of which are required. *See* 18 U.S.C § 1030(a)(5)(C); *Aquent*, 65 F. Supp. 3d at 1344; *Trademotion*, 857 F. Supp. 2d at 1292 n. 3.

Like "loss," the term "damage" has a particular significance under the CFAA, which defines it specifically as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Impaired "integrity" requires "'some diminution in the completeness or usability of data or information on a computer system'." *Trademotion,* 857 F. Supp. 2d at 1292 (quoting *Resdev*, 2005 WL 1924743, at *5); *Maintenx Management*, 2015 WL 310543, at *3. By contrast, impaired "availability" requires RTI to show that Lysenko's actions somehow made certain data or program not readily obtainable.

---

Roper," *id.* at ¶ 22, and (c) access "highly sensitive and confidential financial information" contained in RTI's "online treasury management system." *Id.* at ¶¶ 18-20. Potentially relevant to such allegations are, respectively: intentionally accessing a computer without (or exceeding) authorization and obtaining information from a protected computer, *see* 18 U.S.C. § 1030(a)(2)(C) ("data theft"), knowingly and with fraudulent intent accessing a protected computer and as a result obtaining value from the protected computer that furthers the fraud, *see* 18 U.S.C. § 1030(a)(4) ("fraud"), and intentionally accessing a protected computer and causing damage and loss. 18 U.S.C. § 1030(a)(5)(C) ("hacking").

[4] As will be discussed *infra*, RTI cannot allege that Lysenko "intentionally" did *anything*, since the activity of which RTI now complains was programmed, initiated and enabled by RTI without Lysenko's knowledge or input.

*See Trademotion,* 857 F. Supp. 2d at 1292; *Cheney v. IPD Analytics, LLC*, No. 08–23188–CIV, 2009 WL 1298405, at *6 (Apr. 16, 2009), *report & recommendation adopted*, 2009 WL 2096236 (S.D. Fla. May 8, 2009).

RTI does not and cannot allege it suffered any "damage" of either category, with no facts suggesting any damage or impairment to data, programs, systems, or information owned by RTI. *See, e.g., HCC Ins. Holdings, Inc. v. Flowers*, 237 F. Supp. 3d 1341, 1357 (N.D. Ga. 2017); *Pediatric Nephrology Assocs. of S. Fla. v. Variety Children's Hosp*., 226 F. Supp. 3d 1346, 1354-55 (S.D. Fla. 2016) (holding insufficient conclusory allegations that defendants "hacked" into system to obtain proprietary information for improper uses to impact treatment of patients); *Nianni, LLC v. Fox,* No. 2:11–CV–118–FTM–36DNF, 2011 WL 5357820, at *4 (M.D. Fla. Nov. 7, 2011) (failure to allege cognizable "damage" fatal to CFAA claim under 18 U.S.C. § 1030(a)(5)(C)); *Klein & Heuchan,* 2009 WL 963130, at *4. *Compare SkiData,* 2012 WL 12883836 at *2 (rejecting conclusory allegations in verified pleading absent alleged impairment to systems, diminution in data or information, or programs rendered unusable). This, of course, is understandable since RTI knows that Lysenko never "accessed" to access its systems.[5]

---

[5] Even if RTI alleged that Lysenko had accessed its protected computers, any allegations in the Complaint that suggest "damage" pertain to RTI's speculation that Lysenko intended to access and "steal" RTI's "confidential and proprietary" information, *see* DE 10 at ¶ 21, and to advance his own personal interests, *id.* at ¶ 22, not to any alleged

Equally unavailing is RTI's "fraud" claim under 18 U.S.C. § 1030(a)(4), which fails to include any allegation that Lysenko accessed a protected computer and as a result furthered his intended fraud and obtained something of value. *See* 18 U.S.C. §§ 1030(a)(4) and 1030(g); *see also Agilysys,* 2017 WL 2903364 at *3; *Enhanced Recovery,* 2015 WL 1470852, at *5; *Nianni,* 2011 WL 5357820, at *4; *PharMerica, Inc. v. Arledge*, No. 8:07-CV-486-T-26MAP, 2007 WL 865510, at *6 (M.D. Fla. Mar. 21, 2007). Again, in addition to being unable to allege "access" or "loss," RTI cannot allege that Lysenko "obtained" "something of value" (or of anything at all) and "in furtherance" of the (also unspecified) "fraudulent scheme."

Finally, RTI's "data theft" claim under 18 U.S.C. § 1030(a)(2)(C) equally defective as the others given RTI's inability to allege that Lysenko intentionally accessed a computer, thereby obtaining information from a protected computer. *See* 18 U.S.C. §§ 1030(a)(2)(C) and 1030(g); s*ee also Aquent*, 65 F. Supp. 3d at 1344; *Enhanced Recovery,* 2015 WL 1470852, at *5; *Clarity Servs., Inc. v. Barney*, 698 F. Supp. 2d 1309, 1313 (M.D. Fla. 2010). Again, as RTI has long been aware, in addition to being unable to allege "access" or "loss," RTI cannot alleged that Lysenko "obtained" anything, much less "information from any

---

deletion and/or alteration of the data, which is a required element under the CFAA. *See Pediatric Nephrology*, 226 F. Supp. 3d at 1355; *Continental Group, Inc. v. KW Prop. Mgmt., Inc.*, 622 F. Supp. 2d 1357, 1371 (S.D. Fla. 2009)[5]; *Lockheed Martin*, 2006 WL 2683058, at *7 (M.D. Fla. Aug. 1, 2006).

protected computer" as required under 18 U.S.C. § 1030(a)(2)(C). RTI has never

presented or possessed any grounds that would support a claim under the "data

theft" provision or any other CFAA basis.

### D.     RTI acted in bad faith by grossly and knowingly mischaracterizing critical "facts"

RTI did not simply fail to plead the necessary elements or even plead its

claims and facts inconsistently; sanctions are warranted because RTI knew all

along that the underlying "facts" it advanced in support of its Complaint were

undeniably false. Specifically, RTI repeatedly and falsely alluded to supposed

attempts to access its so-called "online treasury management system," knowing

full well that such allegations were baseless. The only facility having any

relevance to this case is the *mail* server used by RTI (the "*Microsoft Exchange*

*Server*" or "*Exchange Server*"), which has no connection to any alleged "online

treasury management system."[6] RTI based its entire case on alleged activity from

a user account identified as "alys," yet failed to disclose to the Court the fact that

this user account was assigned *by RTI* to Lysenko and was associated *exclusively*

with his RTI e-mail account via the Exchange Server. *See* Lysenko Declaration at

¶¶ 12-17 & Exh. 4. Indeed, the pleadings make no mention of the Exchange

---

[6] The reports used to justify the ex parte subpoenas of Lysenko's private records and the federal criminal accusations against him have not been furnished to the court or identified in the pleadings.

Server, instead referring dramatically to a so-called "online treasury management system."

The importance of this misdirection cannot be overstated when considering the actual "activity" that RTI supposedly "observed."  During his employment, RTI assigned to Lysenko the user name "alys" for the *sole and exclusive* purpose of accessing his electronic mailbox on the Exchange Server. *See* Lysenko Declaration ¶ 12. As RTI knows (having assigned the user name to Lysenko), Lysenko did not use this user name for any other RTI systems. *Id.* RTI also provided Lysenko with a mobile phone that RTI had pre-programmed to receive Lysenko's e-mail messages from his "alys" mailbox on the Exchange Server. *Id.* at ¶ 3.



*See* Lysenko Declaration, Exh. 4. To do so, RTI had enabled an app on the iPhone

called Exchange ActiveSync ("*ActiveSync*") to cause the iPhone to automatically synchronize with the Microsoft Exchange Server mailbox at predetermined intervals or times in the background without any user input or notifications. *Id*. at ¶ 12. RTI enabled this function to occur automatically, regularly and in the background without Lysenko's input or knowledge. *Id*.

When RTI terminated Lysenko, it gave him the mobile phone with no restrictions or instructions other than requiring him to assume billing responsibility. *Id*. at ¶¶ 4, 6. RTI never disabled the ActiveSync function, never alerted Lysenko to this background function, and never instructed or asked him to disable it. *Id*. at ¶¶ 13, 14. Since Lysenko's e-mail credentials were disabled when he was terminated, he would not receive further e-mail messages through the RTI e-mail addresses associated with the "alys" user account. However, since RTI took no steps to disable the ActiveSync function, Lysenko's iPhone apparently continued to futilely "ping" the mail server, *without any input by or knowledge of Lysenko*.[7] *Id*. at ¶¶ 12-16.

---

[7] RTI may attempt to distract the Court by referring to patterns or timelines of "attempts," the records of which have yet to be furnished to the Court or Lysenko. However, Lysenko is not an IT expert and does not profess knowledge on what defaults or mechanisms may cause a mobile device to attempt to synchronize at various times and not others. Nor does he need to because such detours are entirely irrelevant. This case was premised *entirely* upon repeated, unsubstantiated and false allegations that Lysenko was "intentionally" "attempting" to "hack" into an "online treasury management system." Regardless of the technical variances that no doubt impact mobile device mailbox sync functions, RTI simply cannot alter the fact that the underling "activity" it relied upon was neither intentional, knowing or even volitional by Lysenko but was in fact caused by *RTI. See*

Prior to filing suit, RTI Vice President & Controller Jason Conley reached out to Lysenko to ask about the "activity" relating to Lysenko's user name and Lysenko immediately responded, confirming that he had not used any former log-ins, asking for clarification and suggesting that RTI "trace IP address of the accessing party…"



*See* Lysenko Declaration, Exh. 2. However, Lysenko never heard from RTI

---

Lysenko Declaration. More importantly, RTI knew from the associated "alys" user account, which *RTI* assigned exclusively to access the Exchange Server, that there was never any connection to any so-called "online treasury management system."

thereafter and RTI instead filed the lawsuit the same month.

In summary, RTI knew, based on the user name that it assigned to Lysenko exclusively for use with the Exchange Server to access his "alys" mailbox, as well as the mobile device settings that RTI enabled and managed via Exchange Server, that the "suspicious" activity that allegedly forms the basis of the Complaint: (a) related only to the e-mail server and not a vaguely referenced "online treasury management system"[8]; (b) was instigated, caused, managed and controlled by RTI, not Lysenko; and (c) occurred automatically and in the background, i.e., not "intentionally", "knowingly" or "fraudulently". This information was readily ascertainable to RTI (a diverse and sophisticated software design and technology company) and its counsel. Exchange Server provides many tools for auditing and controlling user accounts. The ActiveSync function can be controlled, disabled, blocked and managed by the RTI staff via Exchange Server. *See* Lysenko Declaration at ¶ 12 & Exh. 5.

Even disregarding RTI's status as a publicly traded company that holds itself out as "global marketer" of products including software, its bad faith and

---

[8] After heavily and repeatedly relying on this mischaracterization of its e-mail server as an "online treasury management system," including no fewer than eight (8) references in the Complaint, (DE 10 at ¶¶ 1, 6, 9, 10, 17, 18, 19, 22), RTI now attempts to quietly "walk back" that misstatement, replacing it with even vaguer references to "computer systems" and "computers" through-out its Response in Opposition to Defendant Anthony Lysenko's Motion to Dismiss with Incorporated Memorandum of law. (DE 28 at 2, 3, 5, 7, 8).

18

improper purpose are underscored by its calculated decision to mischaracterize its

e-mail Exchange Server as an "online treasury management system" used to store

"highly sensitive and confidential financial information" to conduct "business in

many different states," presumably to create the alarming specter of threatened

financial cyber-crime. Similarly, RTI was aware that what it described to this

Court as "intentional," "knowing" and "fraudulent" attempts by Lysenko to

"hack" into its systems were the exact opposite: they were in fact nothing more

than the intended function of the ActiveSync app that *RTI* had enabled on

Lysenko's iPhone, *automatically* and in the *background*. *See* Lysenko Declaration.

###### E.    Conclusion

In summary, the Complaint, which levels unsubstantiated and disparaging

claims of criminal conduct, is belied by both the facts and the law and is

objectively frivolous. The utter absence of good faith is emphasized by

mischaracterizations of the underlying "protected computer" and "activity" in an

effort to bolster false accusations of criminal hacking. As a result, the Complaint

violates Rule 11 should be withdrawn. If not, RTI and its counsel should be

sanctioned for filing and refusing to withdraw the Complaint. *See, e.g., Koly v.

Enney*, 269 Fed. App'x. 861, 865 (11th Cir. 2008) (affirming Rule 11 sanctions in

defamation action because, "[b]ased on a reasonable inquiry," Plaintiffs either

"knew or should have known that they could not satisfy necessary elements of

their cause of action….").

WHEREFORE, Defendant Anthony Lysenko respectfully requests that the Court grant this motion, award Lysenko his attorney's fees, and grant such other relief as the Court deems proper.

Date: December 19, 2017

> Respectfully submitted,
> THOMAS & LOCICERO PL
> /s/   *Susan Tillotson Bunch*
> Susan Tillotson Bunch
>   (Fla. Bar. No.: 869562)
> sbunch@tlolawfirm.com
> abeene@tlolawfirm.com
> 601 South Boulevard
> Tampa, Florida  33606
> Telephone: (813) 984-3060
> Facsimile: (813) 984-3070
>
> Attorney and Trial Counsel for
> Anthony Lysenko

## **LOCAL RULE 3.01(G) CERTIFICATION**

Pursuant to Local Rule 3.01(g), Defendant Lysenko's attorney has conferred in good faith with Plaintiff's attorneys on multiple occasions via e-mail in an attempt to resolve the issues raised by the Motion, but that the parties have not been able to agree on the resolution of the Motion.

By:   /s/ Susan Tillotson Bunch
Susan Tillotson Bunch

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on December 19, 2017, the foregoing motion with attachments was served via FedEx on Plaintiff's counsel:

Sara F. Holladay-Tobias, Esquire
Emily Rottmann, Esquire
MCQUIREWOODS LLP
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
Telephone: (904) 798-3200
Facsimile: (904) 798-3207
stobias@mcguirewoods.com
erottmann@mcguirewoods.com
flservice@mcguirewoods.com
jaiken@mcguirewoods.com
clambert@mcguirewoods.com

  but this motion was not filed with the Court.

           By:    /s/ Susan Tillotson Bunch
                 Susan Tillotson Bunch

## CERTIFICATE OF SERVICE

I hereby certify that, on this 10th day of January 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Counsel of Record:

Sara F. Holladay-Tobias, Esquire
Emily Y. Rottmann, Esquire
MCQUIREWOODS LLP
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
Telephone: (904) 798-3200
Facsimile: (904) 798-3207
stobias@mcguirewoods.com
erottmann@mcguirewoods.com
flservice@mcguirewoods.com
jaiken@mcguirewoods.com
clambert@mcguirewoods.com
Attorneys for Roper Technologies, Inc.

By:    /s/ Susan Tillotson Bunch
       Susan Tillotson Bunch