UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

ROPER TECHNOLOGIES, INC.,

     Plaintiff,

vs.                                 Case No.: 8:17-CV-1522-T-33MAP

ANTHONY LYSENKO,             **Dispositive Motion**

     Defendant.
_____/

**DEFENDANT ANTHONY LYSENKO'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Rule 3.01 of the Local Rules for the Middle District of Florida, Defendant Anthony Lysenko ("*Lysenko*"), hereby moves this Court for an order dismissing the Second Amended Complaint (DE 38) filed on behalf of Plaintiff Roper Technologies, Inc. ("*RTT*").

**MEMORANDUM OF LAW**

**I. PROCEDURAL & FACTUAL HISTORY**

RTI filed its initial unverified pleading against a "John Doe" defendant on June 26, 2017. (DE 1). On October 18, 2017, RTI filed its First Amended Complaint, which purported to assert a claim under the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("*CFAA*"). (DE 10). On November 27, 2017, Lysenko moved to dismiss the First

Amended Complaint for failure to state a claim under CFAA. ([DE 20).[1] RTI filed its

Second Amended Complaint (the "*SAC*") on January 31, 2018. ([DE 38](#)).

According to the unverified SAC, RTI stores "highly sensitive" and "confidential

financial information, customer information, and trade secrets" in its vaguely referenced

"computer systems," which systems are subject to limited access, log-in credentials and

monitoring. [DE 38](#) at ¶ 20. RTI's "computer systems" are allegedly used "in interstate

commerce to conduct business in many different states." *Id.* at ¶ 19. The SAC alleges that

Lysenko, a former employee, had access to "certain" RTI's systems during his

employment but that his access was revoked on his termination and he was no longer

"authorized to access" RTI's "computer systems." *Id.* at ¶¶ 21, 22.  The SAC alleges that,

beginning in or about May 2017[2], Lysenko "without authorization, has intentionally

attempted to access protected computers and servers, and thereby obtain confidential and

protected information of Roper." *Id.* at ¶ 23. According to the SAC, RTI's "information

technology professionals observed the commencement of a large number of attempts to

access Roper's computer systems, including its email server, using the username 'alys'."

*Id.* at ¶ 13. The SAC attaches a Failed Logons Report ("*Failed Logons Report*") that

---

[1] Lysenko served a Motion for Rule 11 Sanctions ("*Sanctions Motion*") on RTI on December 19, 2017. ([DE 33](#)). RTI moved to amend one day before the twenty-one (21) day Safe Harbor period relating to the Sanctions Motion expired. ([DE 32](#)). Lysenko filed the Sanctions Motion on January 10, 2018. ([DE 33](#)).

[2] According to the subpoena issued by counsel with leave of court in this case ([DE 5](#)), the alleged activity commenced no later than April 30, 2017. *See* Exhibit A (Subpoena Duces Tecum to Charter Communications).

purports to reflect numerous pairs of unsuccessful "noninteractive" log-on attempts. (DE 38-1).

The SAC also claims in conclusory fashion that Lysenko acted "intentionally," *id.* at ¶¶ 23, 26, 29, "knowingly," *id.* at ¶¶ 26, 29, fraudulently, *id.* at ¶ 28, to "gain access to" RTI's "confidential information", *id.* at ¶¶ 26, 28, and to advance his own personal interests. *Id.* at ¶ 26. According the SAC, the "repeated and consistent" nature of the activity and its termination four (4) weeks after the lawsuit was served "show that Lysenko knowingly and intentionally sought to access Roper's protected computers for the purpose of advancing his personal interests and to use Roper's confidential information for personal gain." *See id*. at ¶¶ 26 and 29. In support of these various conclusions, the SAC relies on the Failed Logons Report. (DE 38-1).

The SAC wraps up with the claim that "[a]s a result of Lysenko's conduct" RTI has incurred "substantial damages in excess of $5,000" in less than one (1) year "in investigating, assessing and responding to Lysenko's hacking attempts, payments to third-party information technology vendors for their services with respect to this investigation, assessment and response, as well as lost revenue, productivity, and other consequential damages" and demands judgment for damages, attorney's fees, injunctive relief, and "the return or destruction of all electronic equipment used in these unauthorized attempts." *Id.* at ¶ 30.

The SAC neither addresses nor cures *any* of the defects previously challenged by Lysenko. The SAC fails to allege that Lysenko (a) "accessed" a computer, (b) as a result of which he obtained something from a computer, (c) that was in furtherance of the

intended fraud, and (d) that caused cognizable "loss" under the CFAA.[3]  Moreover, the

SAC fails to allege any *facts* supporting the conclusory allegations that Lysenko acted

"intentionally," and "knowingly" and with the intent to defraud. Indeed, the SAC doesn't

even attempt to identify the confidential information supposedly sought by Lysenko or

the computer system he allegedly attempted to "hack." More importantly, the Failed

Logons Report rebuts these claims, as it demonstrates only that some "non-interactive"

process was attempting to connect with an Exchange Server using the *same* set of log-in

credentials over and over, each and every time with the same result – user not known.

(DE 38-1). The SAC fails to state a claim under the CFAA and should be dismissed with

prejudice as it demonstrates on its face RTI's inability to plead such a claim.

## II. ARGUMENT

This Court's jurisdiction is based solely on RTI's single-count Complaint

purporting to allege a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030

(the "*CFAA*"). The CFAA generally prohibits accessing a computer without or in excess

of authorization resulting in certain categories of loss or damage. *See* 18 U.S.C. § 1030.

### A.  Applicable procedural standards

To satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil

Procedure, a complaint must simply give the defendants fair notice of what the plaintiff's

---

[3] The SAC quietly eliminates prior repeated accusations that Lysenko was attempting to access its "online treasury management system," which fabrications were used to violate Lysenko's privacy by convincing the Court to issue subpoenas to his cable and phone providers and were one of the primary bases of Lysenko's Motion for Rule 11 Sanctions. *See* DE 33. Having effectuated that purpose, RTI has now substituted more generic terms such as "computer systems." *See* DE 38 at ¶¶ 1, 6, 10, 19, 20, 21, 26, 28.

claim is and the grounds upon which it rests. *See, e.g., Allied Portables, LLC v. Youmans*, 2015 IER Cases 184,602, 2015 WL 3720107, at \*2 (M.D. Fla. 2015). While not requiring "detailed factual allegations," Rule 8 demands more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." *Sinaltrainal v. Coca-Cola Co*., 578 F.3d 1252, 1268 (11th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009), *abrogated on other grounds in Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012)). "To survive a motion to dismiss, a plaintiff must do more than merely 'label' his claims." *In re AOL, Inc. Version 5.0 Software Litig.,* 168 F. Supp. 2d 1359, 1366 (S.D. Fla. 2001) (citing *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994)); *see also Allied Portables*, 2015 WL 3720107 at \*6 (plaintiff's obligation to provide the "grounds" of its entitlement to relief requires more than "labels, conclusions, and formulaic recitation" of the elements).

Courts follow a two-prong approach when considering a motion to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 679). If "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then the claim meets the "plausibility requirement," but it requires "more than a sheer possibility" that the allegations are true. *Id. See also Thomas Christopher Group, Inc. v. Moreno*, No. 8:15–CV–992–T–17EAJ, 2015 WL 4139169, at \*1 (M.D. Fla. Jul. 8, 2015).

Although a court "must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff" when deciding a Rule 12(b)(6) motion to dismiss, *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (1994), *app. after remand*, 166 F.3d 351 (11th Cir. 1998) (citation omitted), *unwarranted* deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of the allegations. *Sinaltrainal*, 578 F.3d at 1268 (citing *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003), *cert. denied*, 540 U.S. 1016 (2003) (citation omitted); *see also Ashcroft*, 556 U.S at 678 ("[N]aked assertions devoid of further factual enhancement are also insufficient to survive a motion to dismiss") (internal quotations omitted).

The SAC consists entirely of regurgitated labels, conclusions unsupported by pleaded facts, and "a formulaic recitation" (albeit incomplete) elements of a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). RTI has failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Not only does the SAC lack sufficient factual allegations supporting any plausible claim for relief under the CFAA, on its face it *negates* any CFAA claim and should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See, e.g., In re AOL,* 168 F. Supp. 2d at 1366 (dismissal is appropriate when no construction of the factual allegations will support the cause of action based on a dispositive issue of law).

6

**B.   RTI still cannot allege elements required under CFAA**

The SAC purports to assert a single claim under CFAA, which prohibits seven (7) types of computer crimes involving or related to unauthorized (or exceeding authorization in most categories) access to computers. *See* 18 U.S.C. § 1030(a). As previously discussed, the CFAA was "'designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possessed the capacity to access and control high technology processes vital to our everyday lives....'" *Alternative Medicine Integration Group, Inc. v. Langford*, No. 8:13-CV-2909-T-33AEP, 2013 WL 6195774, at *3 n. 1 (M.D. Fla. Nov. 19, 2013) (quoting *Trademotion, LLC v. Intelligence Auto. Corp.,* 857 F. Supp. 2d 1285, 1289-90 (M.D. Fla. 2012)).

Although primarily a criminal statute, the CFAA authorizes private individuals and companies to sue for damages caused by actual *violations* of CFAA under limited circumstances: "Any person who suffers damage or loss by reason of a *violation* of this section may maintain a civil action against the *violator* to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g) (italics added). *See also Coll Builders Supply, Inc. v. Velez*, No. 6:17–CV–933–ORL–40DCI, 2017 WL 4158661, at *6 (Aug. 31, 2017), *report & recommendation adopted*, 2017 WL 4125641 (M.D. Fla. Sep. 18, 2017).

The CFAA creates only a "limited private right of action," *Enhanced Recovery Co. v. Frady,* No. 6:17–CV–933–ORL–40DCI, 2015 WL 1470852, at *11 (M.D. Fla.

Mar. 31, 2015), that is not coextensive with the entire statute. A civil plaintiff must allege

not only a "violation" of CFAA, but also that it resulted in "damage or loss" and one of

five statutory factors.[4] 18 U.S.C. § 1030(g). In this case, RTI must allege that Lysenko

"violated" the CFAA and that the "violation" resulted in cognizable "loss" to RTI of at

least $5,000 in a one (1) year period. *See* 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), 1030(g).

*Accord Allied Portables*, [2015 WL 3720107](), at *3; *Aquent, LLC v. Stapleton*, 65 F. Supp.

3d 1339, 1342 (M.D. Fla. 2014).

Like its predecessors, the SAC declines to specify the substantive provision that

Lysenko allegedly violated, alternating between references to (a) "hacking attempts," (b)

attempts to access RTI's "computer systems," ([DE 38]() at ¶¶ 1, 6, 13), (c) attempts to steal

obtain Roper's confidential information, *id.* at ¶23, 26, and (d) attempts to defraud and

gain access to Roper's confidential information. *Id*. at ¶28. Potentially relevant to such

allegations are, respectively: intentionally accessing a computer without (or exceeding)

authorization and obtaining information from a protected computer, *see* 18 U.S.C. §

1030(a)(2)(C) ("data theft"), knowingly and with fraudulent intent accessing a protected

computer and as a result obtaining value from the protected computer that furthers the

fraud, *see* 18 U.S.C. § 1030(a)(4) ("fraud"), and intentionally accessing a protected

computer and causing damage and loss. 18 U.S.C. § 1030(a)(5)(C) ("hacking"). This

---

[4] § 1030(g) limits civil actions to those involving one of the five "factors" enumerated in subparagraphs (I)-(V) of § 1030(c)(4)(A)(i). Only the factor set out in subparagraph (I) (aggregated "loss" of at least $5,000 in one (1) year), is potentially relevant to this case. *See* 18 U.S.C. §1030(g); *Aquent*, 65 F. Supp. 3d at 1352 n. 4 (M.D. Fla. 2014) ("the civil cause of action does not need to be brought under subsection (c)(4)(A)(i), but it must involve conduct enumerated in those paragraphs").

vagueness alone would justify dismissal of the SAC.  *See, e.g., Distinct Media Ltd. v Doe Defendants 1-50*, No. 15-Cv-03312 NC, 2015 WL 13389609, at *4 (N.D. Cal. Sep. 29, 2015) (dismissing CFAA claim for similar failure to specify relevant subsection in light of complexity if CFAA and requirement of fair notice). However, RTI previously represented to this Court that its CFAA claim was based on an alleged violation of 18 U.S.C. § 1030(a)(4), i.e., knowingly and with fraudulent intent accessing a protected computer. *See* 18 U.S.C. § 1030(a)(4). RTI previously represented to the Court that the SAC does not seek to add any new claims, DE 32 at 2-3. Therefore, RTI presumably relies on the same "fraud" section.

To state a civil claim based on a violation of 18 U.S.C. § 1030(a)(4), RTI must allege each of the following elements: (1) Lysenko *accessed* a protected computer, (2) that he lacked authorization or exceeded his authorized access to that protected computer, (3) that he did "knowingly" and (4) with "intent to defraud," and (5) that as result he further[ed] the intended fraud, and (6) [thereby] obtained something of value, and (7) RTI suffered at least $5,000 in loss because of the violation in the one year period. *See* 18 U.S.C. §§ 1030(a)(4) and 1030(g); *see also Agilysys, Inc. v. Hall*, ____ F. Supp. 3d ___, 2017 WL 2903364, at *3 (N.D. Ga. May 25, 2017); *Enhanced Recovery,* 2015 WL 1470852, at *5; *Nianni, LLC v. Fox,* No. 2:11–CV–118–FTM–36DNF, 2011 WL 5357820, at *4 (M.D. Fla. Nov. 7, 2011); *PharMerica, Inc. v. Arledge*, No. 8:07-CV-486-T-26MAP, 2007 WL 865510, at *6 (M.D. Fla. Mar. 21, 2007). However, the SAC fails to allege any of the foregoing; in fact, it includes an exhibit that conclusively negates any CFAA claim by emphasizing the lack of "access" to any computer required to state a

claim under the CFAA as well as the lack of any behavior that could be deemed "knowing" or "intentional."

> 1.   *The SAC fails to allege that Lysenko "accessed" a protected computer*

First, the SAC fails to state claim under the CFAA because it does not and cannot allege that Lysenko "accessed" a protected computer. *See, e.g., Maintenx Management, Inc. v. Lenkowski*, 2015 IER Cases 175,037, 2015 WL 310543, at *3 (M.D. Fla. Jan. 26, 2015) (failure to sufficient allege access was fatal to CFAA claim under 18 U.S.C. § 1030(a)(4)). The various substantive offenses in CFAA, including the "fraud" subsection, are triggered by unauthorized *access,* and the civil claim provision only confers standing to sue a "violator" for a "violation" of CFAA. *See, e.g., Agilysys*, 2017 WL 2903364, at *6 (action can only be brought against the "violator," e.g., the one actually accessed the computers); *Thomas Christopher Group*, 2015 WL 4139169, at *3 (complaint failed to allege facts showing defendant intentionally accessed computer); *Davies v. Afilias Ltd.,* 293 F. Supp. 2d 1265, 1273 (M.D. Fla. 2003); *Power Equip. Maintenance, Inc. v. AIRCO Power Servs., Inc.*, 953 F. Supp. 2d 1290, 1297 (S.D. Ga. 2013) ("CFAA requires that the individual actually *access* the information"); *Trademotion,* 857 F. Supp. 2d at 1293 (no allegations that either defendant accessed plaintiffs' protected computers). Likewise, the Middle District of Florida observed that "none of the forms of conduct listed in § 1030(a)(1–7) suggests that a person who does not access a plaintiff's computer, and who does not access any information on the plaintiff's computer, commits the offense. Moreover, the statute appears to create only a limited private right of action 'against the

violator,' i.e., the person who violates the statute with the requisite criminal intent. 18

U.S.C. § 1030(g)." *Enhanced Recovery,* 2015 WL 1470852, at *11.[5]

As noted above, the "access" requirement applies equally to CFAA "fraud"

claims under 18 U.S.C § 1030(a)(4). *See, e.g., Dresser-Rand Co. v. Jones,* 957 F. Supp.

2d 610, 614-15 (E.D. Pa. 2013) ("The Computer Fraud and Abuse Act governs activity

that involves accessing or damaging computers. Use of the computer is integral to the

perpetration of a fraud under the CFAA, and not merely incidental"); *Role Models*

*America, Inc. v. Jones*, 305 F. Supp. 3d 564, 566 (D. Md.  2004) (rejecting fraud claim

where plaintiff "has not alleged that NSU 'accessed' RMA's computers at all, much less

"intentionally" or "knowingly and with intent to defraud").

Although the Eleventh Circuit has not interpreted the term "access," other courts

have construed it in accordance with both common sense and its dictionary meaning: in

*WEC Carolina Energy Solutions, LLC v. Miller*, 687 F.3d 199 (4th Cir. 2012), the court

noted that "access" means "[t]o obtain, acquire," or "[t]o gain admission to." *Id*. at 204

(quoting Oxford English Dictionary (3d ed. 2011; online version 2012). Thus, one

accesses a computer without authorization when "he gains admission to a computer

without approval." *Id. See also DeSoto v. Board of Parks & Recreation*, 64 F. Supp. 3d

---

[5] RTI has accurately observed that the analysis of "access" in reported cases often focuses on whether one "accessed" a computer directly or through another person; that does not however change the requirement of "access" for a civil claim. The vast majority of reported civil cases under CFAA turn on the issue of whether one's access was "authorized"; the undersigned has found no reported cases recognizing a civil claim based solely on alleged unsuccessful attempts to access a computer. *Compare DeSoto*, 64 F. Supp. 3d at 1103 (rejecting CFAA claim where defendant did not "access" computing device).

1070, 1103 (M.D. Tenn. 2014) ("access" requires proceeding past a login screen and a defendant has not "accessed" a device without gaining admission to its contents); *S.W. Airlines Co. v. BoardFirst, L.L.C.*, No. Civ. A. 06-891, 2007 WL 4823761, *12 (N. D. Tex. Sep. 12, 2007) ("access" means "'to get at' or 'gain access to'") (quoting Merriam-Webster's Collegiate Dictionary (Webster's) 6 (10th ed.  1998); *Am. Online, Inc. v. Nat'l Health Care Disc., Inc.,* 121 F. Supp. 2d 1255, 1272-73 (N.D. Iowa 2000) (quoting Webster's at 6) ("The CFAA does not define "access," but the general definition of the word, as a transitive verb, is to "gain access to." As a noun, "access," in this context, means to exercise the "freedom or ability to ... make use of" something").

The SAC does not and cannot allege that Lysenko *accessed* any computer; instead, it relies on repetitive allegations that Lysenko "attempted" to access RTI's computers, servers, or other systems. (DE 38 at ¶¶ 1, 6, 13, 14, 15, 16, 23, 24, 26, 28, 29 & 30). However, repetition of a non-element does not cure the absence of the critical element itself required for standing to assert a civil claim against a "violator" who has been harmed by a "violation," 18 U.S.C. § 1030(g), particularly when coupled with RTU's own irrefutable evidence that no such access ever occurred. (DE 38-1). Despite the clear statutory language limiting civil actions to CFAA "violations," which in turn require RTI to plead that Lysenko "accessed" a protected computer, RTI insists that it can proceed on a theory of "attempted access." However, the CFAA does not authorize a civil claim for "attempting" to access a protected computer or "attempting" to violate 18 U.S.C. § 1030(a)(4).

12

While 18 U.S.C. § 1030(b) authorizes *criminal punishment* of those who "attempt to" or "conspire to" violate CFAA as set forth in 18 U.S.C. § 1030(c), the civil claim provision only creates standing to sue a "*violator*" in favor of a victim who has suffered damage or loss because of a "*violation.*"[6] 18 U.S.C. § 1030(g). *See Trademotion,* 857 F. Supp. 2d at 1293. While conspiracy to violate CFAA is a separate and distinct *violation* requiring different elements[7], "attempting" to violate CFAA is merely an *incomplete* violation.[8] While courts have opined, some more skeptically than others, on the viability of even a conspiracy claim under CFAA, *see, e.g., Coll Builders Supply*, 2017 WL 4158661, at *10-11; *Trademotion,* 857 F. Supp. 2d at 1293-94; *Agilysys,* 2017 WL

_____

[6] Other provisions demonstrate the intent to distinguish between actual statutory violations (including conspiracy) and attempts: for example, forfeiture provisions may only be imposed on one who has been "convicted of a *violation* of this section, or convicted of *conspiracy to violate* this section…." 18 U.S.C. § 1030(i) (emphasis added).

[7] A conspiracy to violate a law is separate from the underlying crime and requires additional elements, most notably an "agreement" to commit an unlawful act. *See, e.g., United States v. Chandler*, 388 F.3d 796, 805 (2004), *on subseq. appeal*, 271 Fed. Appx. 974, *rehearing denied*, 284 Fed. Appx. 805 (11th Cir. 2008). What distinguishes the offense of conspiracy from a substantive offense, is that "agreement is the essential evil at which the crime of conspiracy is directed'…The agreement itself 'remains the essential element of the crime'." *Id.* at 806 (11th Cir. 2004) (quoting *Iannelli v. United States*, 420 U.S. 770, 777 n. 10 (1975)). *See also Agilysys,* 2017 WL 2903364, at *6. Consequently, a criminal defendant could be charged and convicted of *both* conspiracy to violate the CFAA and the underling substantive violation of CFAA that is the object of the conspiracy.

[8] Unlike attempt, conspiracy does not merge with the substantive offense; a conspirator may be punished for both. *See, e.g., Pinkerton v. United States*, 328 U.S. 640, 642 (1946) ("the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses").

2903364 at *6; *Allied Portables*, 2015 WL 3720107 at *6, no reported cases have recognized a civil claim based on solely on "attempted" access or "attempt" generally.

As noted above, the CFAA authorizes civil actions only against "violators" by those who have suffered damage or loss as a result of a "violation," *Agilysys,* 2017 WL 2903364 at *6. The plain language of CFAA does not authorize civil actions for "attempted violations." The SAC, which purports to be based on the CFAA "fraud" subsection, 18 U.S.C. §1030(a)(4), fails to allege that Lysenko "accessed" a protected computer, a required element of a civil claim under 18 U.S.C. §1030(a)(4).

2. *The SAC fails to sufficiently allege the required intent*

Although the SAC formulaically intones that Lysenko attempted to access RTI's computers "knowingly," "intentionally," "to advance his personal interests" and "to use Roper's confidential information for personal gain," (DE 38 at ¶¶ 26, 28), the facts pleaded in the SAC as well as the attached Failed Logons Report do not support either of these conclusions. *See Ashcroft*, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). According to the SAC, the "repeated" and "consistent" nature of the activity and its abrupt cessation after service of the lawsuit and appearance of counsel lead to the inescapable conclusion that the activity was conducted (a) knowingly, (b) intentionally, (c) to advance personal interests and (d) to use RTI's confidential information for personal gain. (DE 38 at ¶¶ 26, 28).

RTI seeks to advance this theory and impress the Court with the seriousness of its claims by attaching a 146-page document listing failed logons allegedly "attempted" by

Lysenko in his attempt to steal RTI's confidential financial information. (DE 38-1).

However, the Failed Logons Report supports the contrary conclusion: without exception,
*every* attempt documented in the Failed Logons Report was "non-interactive"; i.e., none
involved or required any actions or input by any user. Instead, the previously established
credentials are used. *See, e.g.*, J. De Clercq & G. Grillenmeier, *Microsoft Windows
Fundamentals: For Windows 2003 SP1 and R2* at 238-39 (2007). *See also* DE 38 at ¶14
(RTI contacted Lysenko and indicated that someone was "attempting to access Roper's
computer systems through Lysenko's login credentials;" Lysenko responded that he had
no knowledge of such attempts). Thus, not only does the Failed Logons Report negate
any claimed violation but it also rebuts RTI's claims that Lysenko had any knowledge of,
or involvement in, the alleged logon attempts, thus negating elements of "knowing" and
"intentional" and "fraudulent" behavior.

Without exception, every listed logon "attempt" was *noninteractive*, as noted
above; each such attempt is also associated with the identical error message: "Client not
found in Kerberos database: wrong username, or new computer/user account not
replicated to DC yet." (DE 38-1). The repetitive and consistent nature of the logons is
also noteworthy: virtually all the listed 1,020 "failed logons" occurred in pairs, of which
the overwhelming majority (918) were spaced precisely :15 or :16 seconds apart.[9] The

---

[9] Realizing how little this activity resembles "hacking" and how much it appears to be an
automatic and identical process, RTI now tries to create a new and vague inference of
impropriety, by asserting that the "activity" was "commence[d]" "in or around May
2017" (despite its own subpoena stating that the activity started no later than **April 30,
2017**) and that RTI contacted Lysenko about a contract related to third party treasury
services also "in or around May 2017," presumably intending to imply that such attempts

facts asserted by RTI do not support the conclusion that Lysenko "attempted to access" anything. The Failed Logons Report on its face reflects a *noninteractive* (i.e., no user input) process that, for some reason, kept repeating the same previously recognized credentials, over and over, receiving the same error response. (DE 38-1).

According to RTI, this report "shows" that Lysenko, who RTI claims has sophisticated knowledge of electronic communications systems, intentionally and fraudulently attempted to "hack" into RTI's systems from his *unmasked* home IP address by repeatedly attempting to log-in over 1,000 times with the *same* unrecognized user name *and* password, presumably not an adherent to the maxim that insanity is defined by doing the same thing over and over again while expecting a different result.[10] Moreover, RTI would have this Court believe that Lysenko continued to deliberately attempt to "hack" RTI's computers months after brazenly suggesting that RTI that trace the IP address to determine the source of the activity. *See* Exhibit C[11] (Jason Conley Message to Lysenko referenced in SAC, DE 38 at ¶14).

---

were precipitated by that inquiry, *see* DE 38 at ¶12, even though the communication in question actually took place several days later, **on May 3, 2017**. *See* Exhibit B (May 3, 2017 David Baker Message to Anthony Lysenko referred, but not attached, to SAC) (previously filed with Lysenko Declaration on January 23, 2018 at DE 35-1).

[10] The quote is sometimes attributed to genius Albert Einstein. *See, e.g., Wallace v. Colvin,* 193 F. Supp. 3d 939, 941 (W.D. Ill. 2016). However, like the conclusory statements in the SAC, such attribution is not supported by substantive evidence.

[11] A copy of the June 1, 2017 message from Jason Conley was previously filed with Lysenko's Declaration of January 10, 2018 at DE 33-3.

*3. The SAC fails to allege that Lysenko "obtained anything of value" much less anything that furthered an "intended fraud"*

Once again, however, the SAC does not attempt to allege that Lysenko "furthered his intended fraud" (which likewise is not identified) or that he "obtain[ed] anything of value" from any protected computer as required under 18 U.S.C. § 1030(a)(4). Again, this is not surprising, because RTI does not and cannot allege that Lysenko accessed any from which he could obtain something, much less something in furtherance of a fraud.

*4. The SAC fails to allege cognizable "loss"*

Likewise, the SAC fails to sufficiently allege that RTI sustained cognizable "loss" as defined by the CFAA and that would exceed the $5,000 threshold, which is equally fatal to the CFAA claim. While damages can ordinarily be pled generally, there is no liability under the CFAA unless the victim can specify damages that fall within the statutory definitions of "damage" or "loss." Consequently, pleading a type of damage within the statutory definitions is an essential element of a CFAA claim, without which the CFAA claims must be dismissed. *See, e.g., Arko Plumbing Corp v. Rudd*, Case No. 13–cv–22434–UU,  2013 WL 12059615, at *3 (S.D. Fla. Sep. 26, 2013).

As previously discussed, the CFAA ascribes a specific and limited meaning to the term "loss," defining it as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Not only must RTI allege cognizable loss but that such cognizable "loss" meets the statutory $5,000 threshold. *See* 18 U.S.C. § 1030(g). *See also*

17

*Nexans Wires S.A. v. Stark–USA, Inc.,* 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004) ("[T]he meaning of 'loss,' [under the CFAA] ... has consistently meant a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted.").

Thus, "loss" includes two (2) separate cognizable categories: first, the "reasonable costs incurred in connection with such activities as responding to a violation, assessing the damage done, and restoring the affected data, program system, or information to its condition prior to the violation" and second, "any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Brown Jordan Internat'l, Inc. v. Carmicle,* 846 F.3d 1167, 1174 (11th Cir. 2017). *See also Aquent*, 65 F. Supp. 3d at 1344-45; *Klein & Heuchan, Inc. v. Costar Realty Info, Inc.,* No. 8:08–CV–1227–T–30EAJ, 2009 WL 963130 (M.D. Fla. Apr. 8, 2009). As noted earlier, only the alleged cognizable "loss" is included calculating whether RTI has satisfied the $5,000 in 1-year threshold. *See* 18 U.S.C. § 1030(g); *Aquent*, 65 F. Supp. 3d at 1344.

The SAC fails to allege cognizable "loss" as described by the Eleventh Circuit in *Brown Jordan*. First, because the SAC does not identify a CFAA violation by Lysenko, RTI cannot allege that it incurred any costs or expenses in any way damage caused by a *violation*. The SAC merely adds another conclusory allegation that RTI incurred "costs in investigating, assessing and responding to Lysenko's hacking attempts, payment to third party information technology vendors for their services with respect to this investigation, assessment and response, as well as lost revenue, productivity, and other consequential damages." DE 38 at ¶30. The only "fact" offered in of "loss" states that RTI's IT

professionals "investigated, assessed, and responded to these login attempts, and determined, for example, that between 6/1/17 and 11/15/17 there were 1,000 attempts by 'alys' shown in attachment." (DE 38 at ¶15). RTI relies on the Failed Logons Report generated *November 15, 2017*, long after the complaints were filed, and which reflects that all logons were unsuccessful. RTI does not otherwise explain how it "responded to" or otherwise "assessed" this activity and none of the alleged items resulted from an "offense." 18 U.S.C. § 1030(e)(11). Even if RTI could point to a CFAA violation, the Middle District of Florida has held that while "loss" includes the "costs associated with investigating the scope of damage,*"* a CFAA plaintiff "must allege loss other than the consequential costs of investigating possible damage." *Skidata, Inc. v. Goudie*, No. 6:12-cv-1612-Orl-36KRS, 2012 WL 12883836, at *3 (M.D. Fla. Dec. 19,  2012) (rejecting a CFAA claim based on investigative costs alone).

In addition, none of the "consequential" cost items were "incurred because of interruption of service." RTI does not allege *any* interruption of service, thus precluding costs, lost revenue, or other *consequential* damages in that category of "loss." *See Brown Jordan,* 846 F.3d at 1174; *Klein & Heuchan,* 2009 WL 963130, at *3. Having thus failed to allege that RTI incurred cognizable "loss" of any amount, much less the threshold amount under CFAA, the SAC is defective on its face and should be dismissed under Rule 12(b)(6) as a matter of law.

### C.   CFAA does not authorize the damages sought

Undaunted by the complete lack of legal or factual support for its substantive claims, RTI boldly presses on, demanding judgment for damages, injunctive relief,

equipment forfeiture and/or destruction, attorney's fees, and more. (DE 38 at ¶ 30).

CFAA's civil action provision states: "Any person who suffers damage or loss by reason

of a violation of this section may maintain a civil action against the violator to obtain

compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. §

1030(g). The plain language does not authorize RTI to demand attorney's fees or property

forfeiture. *See* 18 U.S.C. § 1030(g); *see also Sun West Mortgage Co. v. Matos Flores,*

No. 15-1082 (GAG), 2016 WL 1030074 (D.P.R. Mar. 10, 2016) (legal fees and time

spent deciding whether activity was actionable held not recoverable*); Brooks v. AM*

*Resorts, LLC,* 954 F. Supp. 2d 331, 338 (E.D. Pa. 2013) (litigation expenses not

recoverable); *NCMIC Finance Corp. v. Artino*, 638 F. Supp. 2d 1042, *order modified*,

2009 WL 10669611 (S.D. Iowa Nov. 10, 2009); *Wilson v. Moreau,* 440 F. Supp. 2d 81

(D.R.I. 2006), *aff'd*, 492 F.3d 50 (1st Cir. 2007) (attorney's fees prosecuting CFAA action

not recoverable).

Moreover, the CFAA expressly and plainly limits recovery of damages involving

claims that are based on the threshold "loss" factor in 18 U.S.C. § 1030(c)(4)(A)(i)(I) to

*economic* losses. *See Trademotion,* 857 F. Supp. 2d at 1290; *Padmanabhan v. Healey*,

159 F. Supp. 3d 220, 224 (D. Mass. 2016) (attorney fees do not qualify as "losses" under

CFAA), *aff'd*, 2017 WL 3404402 (1st Cir.), *cert. denied*, ___ S Ct. ___, 2017 WL

1650482 (2017). Moreover, absent an allegation of an interruption of service,

consequential damages such as lost revenue are not recoverable. *See Brown Jordan*, 846

F.3d at 1174 ("'Loss' includes the direct costs of responding to the violation in the first

portion of the definition, and consequential damages resulting from interruption of

service in the second."). Again, without any alleged access, RTI has not and cannot allege

any interruption of service, which is required in the Eleventh Circuit for any

"consequential" damages to be cognizable "losses" under the CFAA.

### III. Conclusion

RTI has endeavored to cobble together a non-existent civil claim by casting

various dramatic and serious accusations against a former employee to create the illusion

of a sinister computer criminal. While incredibly disparaging of and damaging to

Lysenko, such assertions otherwise amount at most to ineffective legal legerdemain to

distract the Court's attention from the glaring fact that RTI does not and cannot allege the

elements of "access" and "loss," both of which are critical to its CFAA claim under any

theory. The SAC does not attempt to cure any of the fatal defects previously raised and

adds virtually no substance whatsoever to the previous iteration, except to recharacterize

the systems supposedly implicated. *No* attempt is made to supply *any* of the missing

elements of the alleged "fraud" claim under §1030(a)(2), which continues to lack

allegations that Lysenko "access" a protected computer, that in doing so he "obtained

anything of value" and "furthered the intended fraud."

Conceding that it cannot demonstrate "access," RTI offers this Court a document

that demonstrates some 1,100 identical *non-interactive* failed logons, the overwhelming

majority of which occurred in pairs at precise and repeated intervals, demonstrating

nothing more sinister than automatic activity in which some previously recognized log-in

credentials were contacting the system without being recognized. However, every single

alleged logon attempt was "non-interactive," i.e., not involving user input, thus militating against the argument of a deliberate attempt to "hack" into a protected computer. That RTI's IT professionals apparently cannot explain the cause of such activity does not militate a finding of criminal intent by Lysenko. It certainly would extend the CFAA beyond "its original purpose of targeting computer hackers." *Grow Financial Federal Credit Union v. GTE Federal Credit Union*, No: 8:17-CV-1239-T-30JSS, 2017 WL 3492707 (M.D. Fla. Aug. 15, 2017) (disapproving extension of CFAA to reach employees who violate computer usage policies or divulge company secrets).

WHEREFORE, Defendant Anthony Lysenko respectfully requests that the Court dismiss the Second Amended Complaint with prejudice.

Date: February 14, 2018

Respectfully submitted,

THOMAS & LOCICERO PL

/s/ *Susan Tillotson Bunch*
Susan Tillotson Bunch
 (Fla. Bar. No.: 869562)
sbunch@tlolawfirm.com
abeene@tlolawfirm.com
601 South Boulevard
Tampa, Florida 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070

Attorney and Trial Counsel for
Anthony Lysenko

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on this 14th day of February 2018, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which will send a

notice of electronic filing to Counsel of Record:

Sara F. Holladay-Tobias, Esquire
Emily Rottmann, Esquire
MCGUIREWOODS LLP
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
Telephone: (904) 798-3200
Facsimile: (904) 798-3207
stobias@mcguirewoods.com
erottmann@mcguirewoods.com
flservice@mcguirewoods.com
jaiken@mcguirewoods.com
clambert@mcguirewoods.com

Attorneys for Plaintiff Roper Technologies, Inc.

By:     /s/ Susan Tillotson Bunch
        Susan Tillotson Bunch